In the Matter of the ESTATE OF
Veronica C. ONGARO,
Deceased.

Denver Water Department Credit
Union, Petitioner,

v.

The Estate of Veronica C.
Ongaro Respondent.

No. 98SC435.

Supreme Court of Colorado,
En Banc.

March 13, 2000.

Rehearing Denied April 10, 2000.*

* Justice KOURLIS does not participate.

Beck & Cassinis, P.C., Howard J. Beck, Diana J. Payne, Aurora, Colorado, Attorneys for Petitioner.

James D. Osborne, Craig, Colorado, Attorney for Respondent.

Berenbaum, Weinshienk & Eason, P.C., Robert G. Wilson, Jr., Daniel S. Duggan, Denver, Colorado, Attorney for Amicus Curiae Colorado Credit Union League.

Chief Justice MULLARKEY delivered the Opinion of the Court.

The Denver Water Department Credit Union (the Credit Union) appeals the court of appeals' decision in *In re Estate of Ongaro*, 973 P.2d 660 (Colo.App.1998), affirming the probate court's dismissal of the Credit Union's claim against the estate (Estate) of Veronica Ongaro (Decedent). We granted certiorari to determine whether the court of appeals erred by determining that the Credit Union's claim against the Estate is barred because the Credit Union failed to comply with the reasonable notice and proper presentation requirements of section 15–12–803(1)(a)(III), 5 C.R.S. (1999). We now affirm the court of appeals' decision.

## I.

This case arises from a loan transaction that occurred prior to the Decedent's death.

In October 1992, Arthur Watson (Watson), an employee of the Denver Water Department and member of the Credit Union, applied for a loan to purchase a 1990 Plymouth Voyager station wagon. Based on Watson's credit history, the Credit Union denied the loan application. Thereafter, Watson's wife, Mary Ongaro–Watson (Ongaro–Watson), attempted to co-sign the loan on behalf of her mother, the Decedent, pursuant to authority granted in several powers of attorney. The Credit Union, however, declined to recognize Ongaro–Watson as the Decedent's authorized agent.

The Decedent eventually appeared in person at the Credit Union to help her son-in-law obtain the loan. In exchange for the loan, the Decedent and Watson signed and delivered a promissory note in the amount of $14,881.45 to the Credit Union. The note was payable in semimonthly installments of $190.51 and was secured by the 1990 Plymouth Voyager station wagon that Watson purchased with the loan.

Payments on the note were deducted from Watson's paycheck until the summer of 1993, when he ended his employment with the Denver Water Department. Thereafter, Watson fell behind on his payments, and on March 23, 1994, the Credit Union sent notices of default to Watson and the Decedent.

On March 31, 1994, the Decedent tendered enough money to the Credit Union to bring the payments on the note current. Subsequent payments were made by Ongaro–Watson from a joint checking account owned with the Decedent. After each payment, the Credit Union sent identical receipts to Watson and the Decedent.

On May 13, 1994, the Decedent died, survived by Ongaro–Watson and her other daughter, Elizabeth Ongaro–Ruhl (Ongaro–Ruhl). The Moffat County District Court (probate court) admitted the Decedent's estate to probate and appointed Ongaro–Watson personal representative of the Estate.

Ongaro–Watson advised the Estate's attorney of the Decedent's liability on the note but was informed that she did not need to notify the Credit Union of the Decedent's death or of the deadline for presenting claims against the Estate. Ongaro–Watson published a notice in the Northwest Colorado Daily Press providing creditors an October 11, 1994 deadline for filing claims against the Estate but did not provide the Credit Union with actual notice of the Decedent's death or of the deadline for filing claims.

In November 1994, Joseph Janosec (Janosec) replaced Ongaro–Watson as the Estate's personal representative. At that time Janosec had no knowledge of the Decedent's liability on the note.

Ongaro–Watson continued to make payments on the note from the joint account until January 1995. In April 1995, the Credit Union repossessed Watson's station wagon. The Credit Union subsequently sold the station wagon for $6,000. The proceeds from the sale only partially satisfied the debt remaining on the note.

On May 24, 1995, the Credit Union first learned of the Decedent's death. The following day, a year and twelve days after the Decedent's death, the Credit Union presented a formal claim against the Estate for the amount remaining on the note.

On June 9, 1995, Janosec notified the Credit Union that the Estate was disallowing the claim. The Credit Union responded by submitting a second formal claim to Janosec and filing a petition for allowance of claim in the probate court.

The probate court interpreted section 15–12–803(1)(a)(III) as a nonclaim statute that required all creditors to present claims against the Estate within one year of the Decedent's death. Finding that the Credit Union had failed to present its claim against the Estate within one year of the Decedent's death, the probate court dismissed the Credit Union's claim as time-barred. The probate court rejected the Credit Union's arguments that Ongaro–Watson had wrongfully concealed the fact of the Decedent's death and that the one-year period for presenting claims under section 15–12–803(1)(a)(III) was tolled by Ongaro–Watson's conduct. The probate court further rejected the Credit

Union's assertions that Ongaro–Watson's personal knowledge of the Decedent's liability on the note excused the Credit Union's duty to present its claims against the Estate.

The court of appeals affirmed the probate court's decision. This appeal followed.

## II.

Section 15–12–804 sets forth three methods of presenting a claim against an estate.[1] *See* § 15–12–804(1), (2); *In re Estate of Hall,* 948 P.2d 539, 541–42 (Colo.1997). First, a claimant may mail or deliver a written statement to the estate's personal representative. *See* § 15–12–804(1); *Estate of Hall,* 948 P.2d at 541–42. Second, a claimant may file its written claim with the clerk of the court where the estate is being probated. *See* § 15–12–804(1); *Estate of Hall,* 948 P.2d at 542. Third, a claimant may commence litigation against the personal representative to obtain payment of its claim against the estate. *See* § 15–12–804(2); *Estate of Hall,* 948 P.2d at 542.

If a claimant opts to use either the first or the second method, the written claim must state the basis of the claim, the name and address of the claimant, and the amount claimed. *See* § 15–12–804(1). Additionally, the written claim must indicate the nature of any uncertainty or contingency of the claim, any property securing the claim, and, if not yet due, the date on which the claim will become due. *See id.* A claim is deemed presented when the claimant complies with one of these three methods for presenting the claim. *See* § 15–12–804(1), (2).

The Credit Union maintains that under Colorado law a claimant need not file a formal claim against an estate when the estate's personal representative has knowledge of the claim. The Credit Union urges us to consider the totality of the circumstances when analyzing whether the Credit Union provided Ongaro–Watson with reasonable notice of its claim against the Estate. According to the Credit Union, Ongaro–Watson's participation in the loan application process, the payments on the note made by Ongaro–Watson from the joint checking account, and a single payment receipt addressed to the Decedent and mailed to Ongaro–Watson's residence provided sufficient notice of the Credit Union's claim against the Estate. Thus, the Credit Union argues that it is excused from the formal presentation requirements of section 15–12–804.

■ We agree with the Credit Union that a creditor need not comply strictly with each of the formal requirements of section 15–12–804. The General Assembly has not required creditors to describe their claims with absolute precision. "Failure to describe correctly the security, the nature of any uncertainty, and the due date of a claim not yet due does not invalidate the presentation made." § 15–12–804(1).

■ Nevertheless, we find that section 15–12–804 does require that a creditor provide a personal representative with reasonable notice that it is making a claim against an estate. Notice to a personal representative that a creditor could bring a claim against an estate is different from notice that the creditor in fact is bringing that claim. At a minimum a written claim must contain (1) a request or demand for payment from the estate, and (2) sufficient information to allow the personal representative to investigate and respond to the claim.

---

1. Section 15–12–804 provides in relevant part:

 (1) A claimant against a decedent's estate may deliver or mail to the personal representative a written statement of the claim indicating its basis, the name and address of the claimant, and the amount claimed, or may file a written statement of the claim in the form prescribed by rule, with the clerk of the court. The claim is deemed presented on the first to occur of receipt of the written statement of claim by the personal representative, or the filing of the claim with the court. If a claim is not yet due, the date when it will become due shall be

 stated. If the claim is contingent or unliquidated, the nature of the controversy shall be stated. If the claim is secured, the security shall be described. Failure to describe correctly the security, the nature of any uncertainty, and the due date of a claim not yet due does not invalidate the presentation made.

 (2) A claimant having a claim described in section 15–12–803(1) may present a claim by commencing a proceeding against the personal representative in the court where the personal representative was appointed to obtain payment of his or her claim.

The Credit Union relies heavily on *Strong Bros. Enterprises, Inc. v. Estate of Strong,* 666 P.2d 1109 (Colo.App.1983), for the proposition that a claimant need not formally present a claim where the personal representative has sufficient personal knowledge of the estate's liability to the claimant. According to the Credit Union, section 15–12–804(1) requires only substantial compliance when the personal representative has personal knowledge of the facts underlying the claim.

In *Strong,* the court of appeals considered whether a letter addressed to the personal representative's attorney presented a claim against the estate. *See id.* at 1110–11. The letter notified the attorney of a contingent claim against the estate and included a copy of the contractual agreement between the claimant and the decedent on which the claim was based. *See id.* The personal representative's attorney had drafted the agreement. *See id.*

The estate argued that the letter failed to satisfy the presentation requirements of section 15–12–804(1) because the information provided in the letter would not have been sufficient to explain the nature of the claim to a stranger to the transaction and because the claimant addressed the letter to the personal representative's attorney, not the personal representative. *See id.* at 1111–12. The court of appeals disagreed, holding that, given the attorney's intimate knowledge of the agreement, the letter provided adequate notice of the claim. *See id.* The court of appeals further held that, under principles of agency, delivery of the letter to the personal representative's attorney constituted constructive notice to the personal representative. *See id.* at 1112.

We interpret *Strong* to address whether a personal representative's preexisting familiarity with the basis of a claim is relevant in determining whether a written claim mailed or delivered to the personal representative adequately indicates the basis of the claim. *Strong* does not address whether the personal representative's familiarity with the basis of a claim excuses a claimant's failure to request or demand payment of the claim. Accordingly, we find this case readily distinguishable from *Strong.*

■ Unlike the claimant in *Strong,* the Credit Union did not request or demand payment from the Estate. Ongaro–Watson's mere knowledge that the Credit Union could demand payment from the Estate does not excuse the Credit Union's failure to demand such payment.

■ Furthermore, we cannot construe the payment receipt addressed to the Decedent and mailed to Ongaro–Watson's residence as a written statement by which the Credit Union presented its claim against the Estate. Although the receipt indicated the Credit Union's name and address, an account number, and an account balance, it did not request or demand payment of that balance by the Decedent or the Estate. Because the receipt did not indicate that the Credit Union was asserting a claim against the Estate rather than merely acknowledging the Decedent's payment, it failed to satisfy the requirements for presentation of claims prescribed by section 15–12–804(1).

### IV.

#### A.

Section 15–12–803(1) establishes the deadline for presenting a personal representative with claims against a decedent's estate for debts that arose prior to the decedent's death.[2] Claimants that receive publication notice that they must present claims against an estate must do so within the time set forth

---

2. Section 15–12–803(1)(a) provides:
 All claims against a decedent's estate which arose before the death of the decedent, including claims of the state of Colorado and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statutes of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:
 (I) As to creditors barred by publication, within the time set in the published notice to creditors;
 (II) As to creditors barred by written notice, within the time set in the written notice;
 (III) As to all creditors, within one year after the decedent's death.

in the publication. *See* § 15–12–803(1)(a)(I). Claimants receiving written notice must present claims within the time set forth in the written notice. *See* § 15–12–803(1)(a)(II). All creditors must present claims within one year after a decedent's death. *See* § 15–12–803(1)(a)(III).

Neither party disputes that the Credit Union did not receive written notice to present its claims against the Estate. Further, the probate court held publication notice to be ineffective as to known creditors such as the Credit Union. *See generally Tulsa Prof'l Collection Servs. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). The Estate does not argue that the probate court erred in this regard. Accordingly, we consider only whether the one-year deadline applicable to all claimants bars the Credit Union's claim against the Estate.

The Credit Union argues that the probate court and court of appeals incorrectly interpreted section 15–12–803(1)(a)(III) as a nonclaim statute and not an ordinary statute of limitations. The Credit Union maintains that section 15–12–803(1)(a)(III), as a statute of limitations, is subject to tolling in appropriate circumstances. The Credit Union urges that, given Ongaro–Watson's decision not to mail the Credit Union notice of the Decedent's death notwithstanding her knowledge of the Decedent's liability on the note, equity requires that the one-year period for filing claims be tolled.

In *In re Estate of Randall*, 166 Colo. 1, 441 P.2d 153 (1968), we interpreted the predecessor of section 15–12–803(1), section 153–12–12(1), 7 C.R.S. (1963), to be a nonclaim statute, not an ordinary statute of limitations.[3] We held that the particular language of the statute providing that claims "if not so filed, shall be forever *barred*" was not the language of a statute of limitations. *See Estate of Randall*, 166 Colo. at 6, 441 P.2d at 155 (emphasis added). Rather, the statute created "an absolute bar" against the enforcement of late-filed claims. *See id.* We noted that, otherwise,

> "the settlement of an estate might be deferred indefinitely, and the heirs and legatees, the rightful owners of the property of

the estate, or the beneficiaries of the will of the decedent ... kept out of the enjoyment of their possessions and deprived of the benefits secured to them by the laws of the state for such an unreasonable time as to practically deprive them of their property."

*Id.* (quoting *Brooks v. Federal Land Bank*, 106 Fla. 412, 143 So. 749, 753 (1932)).

The General Assembly repealed section 153–12–12(1), 7 C.R.S. (1963), in 1973, reenacting the statute at 15–12–803. *See* ch. 451, sec. 1, § 153–12–12, 1973 Colo. Sess. Laws 1538, 1592. In *Estate of Hall*, we interpreted section 15–3–803(1)(b), 6B C.R.S. (1986), to be a nonclaim statute. *See Estate of Hall*, 948 P.2d at 541, 545. In 1990 the General Assembly again repealed and reenacted section 15–12–803(1)(a) to provide deadlines for claims by claimants receiving written notice as well as publication notice. *Compare* § 15–12–803(1), 6B C.R.S. (1986) *with* ch. 115, sec. 3, § 15–12–803(1)(a), 1990 Colo. Sess. Laws 904, 905–06.

■ Applying the reasoning of our decision in *Estate of Randall*, we find section 15–12–803(1) to be a nonclaim statute, not a statute of limitations. The statute states that claims not filed within the applicable time period "are *barred* against the estate, the personal representative, and the heirs and devisees of the decedent." § 15–12–803(1) (emphasis added). The General Assembly's use of the term "barred" indicates its intent to render concepts of waiver or tolling, which are applicable to statutes of limitations, generally inapplicable to section 15–12–803(1). *See Estate of Hall*, 948 P.2d at 541 n. 3; *Estate of Randall*, 166 Colo. at 6–7, 441 P.2d at 155.

Interpreting section 15–12–803(1) as a nonclaim statute furthers the purposes of the Colorado Probate Code, sections 15–10–101 to 15–17–102, 5 C.R.S. (1999). Among these purposes is the promotion of "a speedy and efficient system for settling the estate of the decedent and making distributions to his successors." § 15–10–102(2)(c). Allowing creditors to toll claims against estates would frustrate the speedy and efficient settlement of estates and distribution of assets.

---

**3.** Section 153–12–12(1), 7 C.R.S. (1963), provided: "All claims, including unmatured or contingent claims, shall be filed on or before the date

fixed in the notice to creditors as the last date for filing claims, and if not so filed, shall be forever barred against said estate." (1963).

### B.

The Estate argues that because section 15–12–803(1)(a)(III) is a nonclaim statute and not a statute of limitations, the probate court lacked jurisdiction to hear the Credit Union's claim. Thus, maintains the Estate, the probate court properly dismissed the claim.

■ A court's jurisdiction concerns its power to entertain and to render a judgment on a particular claim. *See, e.g., McLeod v. Provident Mut. Life Ins. Co.,* 186 Colo. 234, 241, 526 P.2d 1318, 1322 (Colo.1974); *Whitten v. Coit,* 153 Colo. 157, 174, 385 P.2d 131, 140 (1963); *Williams v. Hankins,* 75 Colo. 136, 225 P. 243 (1924). The jurisdiction of Colorado's courts is established either by the Colorado Constitution or by statute. Article VI, section 9 of the Colorado Constitution sets forth the jurisdiction of Colorado's district courts, including the Moffat County District Court: "The district courts shall be courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases, except as otherwise provided herein, and shall have such appellate jurisdiction as may be prescribed by law." Colo. Const. art. VI, § 9(1).

Under article VI, section 9, the original jurisdiction of Colorado's district courts extends to "all civil, probate, and criminal cases, except as otherwise provided" in the constitution. The case now before us plainly falls within the Moffat County District Court's original jurisdiction over probate cases, and we find no provision in the Colorado Constitution that authorizes the General Assembly to limit that district court's jurisdiction over such cases by statute.

■ If the Estate is correct in its assertion that a district court lacks jurisdiction over claims against an estate filed after the deadlines provided in section 15–12–803(1), then district courts are entirely without power to entertain such claims, irrespective of the underlying merits of the claim or circumstances surrounding the late presentation of the claim. Once presented with evidence that a claim was filed after the deadline provided in section 15–12–803(1), a district court would have to dismiss the claim for lack of jurisdiction.[4] *Cf. City of Boulder v. Public Serv. Co.,* 996 P.2d 198, 202 (Colo.App. 1999) (holding that if a plaintiff fails to prove that the court has subject matter jurisdiction over a claim, the court must dismiss the claim because any other order would be void and unenforceable).

■ In addressing the effects of failure to meet the statutory deadline for filing a claim against an estate, we have stated that "[a] nonclaim statute operates to deprive a court of jurisdiction." *Estate of Randall,* 166 Colo. at 6, 441 P.2d at 155; *see also In re Estate of Daigle,* 634 P.2d 71, 77 (Colo.1981) (holding that "section 15–12–803(2) creates a jurisdictional bar to a claim untimely filed ... against a decedent's estate"); *Sommermeyer v. Price,* 198 Colo. 548, 551, 603 P.2d 135, 138 (1979) (interpreting *Estate of Randall* as holding that "once an estate [is] opened and a notice to creditors [is] given, the court [is] without jurisdiction to adjudicate untimely filed claims"). Although our prior cases reached the correct outcomes in dismissing untimely claims against estates, these conclusory statements about jurisdiction mischaracterized the precise effects of the nonclaim statute. Having reviewed the applicable case law and constitutional and statutory provisions, we conclude that the nonclaim statute does not deprive courts of jurisdiction over untimely claims.

Looking first to the statute before us, we find no language expressly or by necessary implication limiting the probate court's jurisdiction. *Cf. In re A.W.,* 637 P.2d 366, 374 (Colo.1981) (holding that a statute will not be construed as an attempt to limit a court's power "unless the limitation is explicit"). Hence, we have no need to determine whether or to what extent the legislature could divest the district courts of jurisdiction. *Compare, e.g., Garcia v. District Court,* 157 Colo. 432, 403 P.2d 215 (1965) (finding a

---

4. Concluding that a court lacks jurisdiction over a claim may have any number of legal consequences. For instance, when a court has jurisdiction to hear a claim, even an erroneous judgment of that court is not subject to collateral attack. *See City of Thornton v. Bijou Irrigation Co.,* 926 P.2d 1, 83 (Colo.1996). Where, however, a court lacks jurisdiction to hear a claim, the court's judgment may be attacked collaterally in subsequent litigation. *See Whitten,* 153 Colo. at 174, 385 P.2d at 140.

statute unconstitutional under article VI, section 9 of the Colorado Constitution because it purported to grant the Denver juvenile court exclusive jurisdiction over certain criminal cases involving minors) *with Department of Revenue v. Borquez,* 751 P.2d 639, 642 (Colo. 1988) (holding that "the broad jurisdiction of the district courts may be restricted by legislation").

The notion that district courts lack jurisdiction over late claims is a creature of the case law. There is no clear basis for our prior decisions suggesting that the nonclaim statute actually deprives a court of jurisdiction over untimely claims against estates. This court originally premised its assumption that a nonclaim statute deprives a court of jurisdiction on the fact that, unlike a statute of limitations, a nonclaim statute generally cannot be waived or tolled. *See Estate of Randall,* 166 Colo. at 6–7, 441 P.2d at 155. However, the inapplicability of doctrines of waiver and tolling to the nonclaim statute does not itself compel the conclusion that the statute operates to divest courts of jurisdiction over untimely claims against estates. The prior cases give us only conclusory statements without supporting analysis or authorities.

In addition to the lack of any sound legal basis for the "no jurisdiction" approach, we note that continuing to construe section 15–12–803(1) to divest courts of jurisdiction over untimely claims against estates could impair the speedy and efficient settlement of estates. For instance, holding that section 15–12–803(1) divests courts of jurisdiction over untimely claims may subject judgments against estates to collateral attacks in subsequent enforcement actions, thereby impairing the efficient or expeditious distribution of estate assets. By contrast, construing section 15–12–803(1) not to divest courts of jurisdiction facilitates the speedy and efficient settlement of estates by precluding such collateral attacks on judgments.

For these reasons, we conclude that section 15–12–803(1) does not divest courts of jurisdiction over untimely claims against estates. Instead, we interpret section 15–12–803(1) to bar the enforcement of late-filed claims against an estate.

## C.

 Unlike a statute of limitations, the deadline for filing claims established by section 15–12–803(1) generally cannot be waived or tolled. *See Estate of Hall,* 948 P.2d at 541 n. 3; *Estate of Daigle,* 634 P.2d at 75–77; *Estate of Randall,* 166 Colo. at 6, 441 P.2d at 155; *Crowley v. Farmers Bank,* 109 Colo. 146, 151–52, 123 P.2d 407, 410 (1942). The rationale behind not permitting an estate's personal representative to waive the requirement that creditors present claims within one year is "that the personal representative is a trustee of the estate for the benefit of its creditors and heirs, and as such cannot by his conduct waive any provision of a statute affecting their substantial rights." *Crowley,* 109 Colo. at 152, 123 P.2d at 409. Likewise, courts generally have refused to toll the one-year nonclaim period in order to "expedite the orderly and exact settlement of estates of decedents." *Estate of Randall,* 166 Colo. at 7, 441 P.2d at 155. Our cases consistently have recognized the policy in favor of dismissing untimely claims brought against an estate where addressing the merits of the claims would delay the settlement of the estate and the distribution of assets to the estate's devisees, legatees, and other claimants.

 In this case, permitting the Credit Union's claim to go forward would impair the speedy and efficient settlement of the Estate. The record reflects that the probate court found the Decedent's two daughters, Ongaro–Watson and Ongaro–Ruhl, to be her heirs. The record further reflects that the Decedent's will leaves half of the residuary of the Estate to Ongaro–Watson and the other half to be kept in trust for Ongaro–Ruhl and her son. Permitting the Credit Union to litigate its claim would delay the distribution of these parties' shares of the Estate and undermine the policy behind section 15–12–803(1). Accordingly, we reject the Credit Union's argument that Ongaro–Watson's conduct tolled the one-year period for presenting claims against the Estate and conclude that the trial court properly dismissed the Credit Union's claim.

We are aware that the firm deadline for presenting claims under section 15–12–803(1)

occasionally will work a hardship on claimants who do not receive actual notice of a decedent's death. The General Assembly, however, has determined that the burden on those claimants is outweighed by the interest in the speedy and efficient settlement of estates.

We also recognize that our holding today may appear to provide an incentive to some personal representatives not to provide known creditors with written notice of the deadline for presenting claims. There is, however, a statutory disincentive. A personal representative who decides not to provide known creditors with written notice of a decedent's death and of the deadline for filing claims must forfeit the shorter nonclaim periods under sections 15–12–803(1)(a)(I) and (II) in favor of the one-year period under section 15–12–803(1)(a)(III). We also note that, should a personal representative's conduct rise to the level of fraud, section 15–10–106, 5 C.R.S. (1999), provides a remedy to injured claimants.

## V.

Lastly, the Credit Union argues that dismissal of its claim pursuant to section 15–12–803(1)(a)(III) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In support of this argument, the Credit Union cites *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988).

■ The Due Process Clause of the Fourteenth Amendment requires states to provide a party with notice and an opportunity to be heard prior to taking action that will affect that party's property interests. *See Tulsa*, 485 U.S. at 484–85, 108 S.Ct. 1340. Such notice must be " 'reasonably calculated ... to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.' " *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). If an interested party's name and address are reasonably ascertainable, the state must provide the party with actual notice of the pending action. *See Tulsa* 485 U.S. at 485, 108 S.Ct. 1340.

In *Tulsa*, the United States Supreme Court addressed the constitutionality of an Oklahoma nonclaim statute. The statute directed the probate court to appoint an executor or executrix after admitting the will to probate. *See id.* at 481, 108 S.Ct. 1340. Immediately following appointment, the executor or executrix was required to publish notice advising creditors to present claims within two months after the date of first publication. *See id.* If the decedent was intestate, creditors were given only one month to present claims. *See id.*

The Court concluded that the period for presenting claims under the statute did not begin to run without significant state action and, therefore, the statute was not self-executing. *See id.* at 487–88, 108 S.Ct. 1340. Specifically, the Supreme Court noted that appointing an executor or executrix and filing copies of the publication notice and an affidavit with the court were preconditions to the running of the limitations period under the nonclaim statute. *See id.* The Supreme Court held that this significant state action implicated the actual notice requirements of the Due Process Clause of the Fourteenth Amendment. *See id.* Thus, the statute was unconstitutional as to known creditors entitled to receive actual notice—not merely publication notice—of deadlines for filing claims against estates.

■ Unlike the Oklahoma nonclaim statute declared unconstitutional in *Tulsa*, section 15–12–803(1)(a)(III) is self-executing. The one-year period for presenting claims begins to run on the day of the decedent's death, not on the occurrence of an event requiring action by the state. *See* § 15–12–803(1)(a)(III). Accordingly, we find *Tulsa* inapposite to the case presently before us.

■ The only remaining question, then, is whether the Credit Union was denied due process because section 15–12–803(1)(a) (III) required that it file its claim against the Estate within one year of the Decedent's death. Ordinarily, a state's mere involvement in the running of a statute of limitations will not constitute a deprivation of a claimant's constitutional rights to due process. *See Tulsa*, 485 U.S. at 485–86, 108 S.Ct. 1340; *Flagg Bros., Inc. v. Brooks*, 436 U.S. at 149, 166, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). We previously have held that a statute of limitations does not deprive a claimant of its rights to due process unless the time for bringing the claim is so limited

as to amount to a denial of justice. *See, e.g., Dove v. Delgado,* 808 P.2d 1270, 1273 (Colo. 1991). The legislature is the primary judge of what amount of time is reasonable. *See id.*

The General Assembly has determined that a one-year period for presenting claims is necessary to promote the speedy and efficient settlement of estates. We cannot conclude that the one-year period for bringing a claim against an estate under section 15–12–803(1)(a)(III) is so limited as to amount to a denial of justice. Consequently, we find that the Credit Union was not deprived of its right to due process by application of the one-year limitation in section 15–12–803(1)(a)(III).

The judgment of the court of appeals is affirmed.

Justice KOURLIS does not participate.