173 P.3d 448

In the Matter of the ESTATE OF Linda K. STEPHENSON, Deceased.

Arizona Health Care Cost Containment System, Petitioner/Appellee,

v.

Gove L. Allen, Trustor of the Estate of Linda K. Stephenson; and American Savings Life Insurance Company, Respondents/Appellants.

No. 1 CA–CV 06–0785.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 27, 2007.

Koeller Nebeker Carlson & Haluck LLP by Wade R. Causey, James M. O'Brien, Phoenix, Attorneys for Petitioner/Appellee.

Ramras Law Offices PC by David N. Ramras, Ari Ramras, Phoenix, Attorneys for Respondents/Appellants.

## OPINION

PORTLEY, Judge.

¶ 1 This appeal requires us to address whether a secured creditor has to seek permission from the superior court or from the personal representative of an estate before conducting a trustee's sale of property secured by a deed of trust. Because we hold that a secured creditor need not seek permis-

sion to conduct a statutory trustee's sale, we reverse the judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 2 American Savings Life Insurance Company ("American Savings") loaned Linda Stephenson $30,000, secured by a deed of trust on her Mesa property in 2001, and recorded the deed of trust.

¶ 3 Ms. Stephenson died in February 2003. At the time of her death she owed the Arizona Health Care Cost Containment System ("AHCCCS") for medical benefits provided her. AHCCCS recorded a Notice of Medical Assistance Lien against the Mesa property in June 2004.

¶ 4 AHCCCS, as a creditor, filed a Petition for Formal Probate of Will and Appointment of Personal Representative in July 2004. AHCCCS was appointed personal representative of Stephenson's estate five months later.

¶ 5 Before AHCCCS was appointed personal representative, Gove Allen, trustee under the deed of trust, recorded a notice of trustee's sale in October 2004.[1] He conducted a public trustee's sale on January 18, 2005, and sold the property to American Savings for a credit bid of $34,828.

¶ 6 AHCCCS filed a statement of Inventory and Appraisement in February 2005, which listed the Mesa property as the estate's only real property asset. The statement valued the property at $40,267, and indicated that there were no known encumbrances on the property.

¶ 7 Seven months later, AHCCCS filed a Petition to Recover Assets. AHCCCS requested an order directing Allen and American Savings to return the property to the estate. It argued that Allen wrongfully converted estate assets by conducting the sale without obtaining permission from the personal representative or the court. In addition to the order, the petition sought damages equal to the value of the property and its reasonable attorneys' fees.

---

1. Trustee's sales are conducted pursuant to Arizona Revised Statutes ("A.R.S.") sections 33–807 to –821 (2007).

¶ 8 American Savings responded, and argued that, as a secured creditor, it had the right to enforce its security and it was not required to first seek permission from the personal representative or the court. American Savings moved for summary judgment, arguing that the probate statutes on which AHCCCS relied did not apply to secured creditors. AHCCCS responded and filed a cross-motion for summary judgment.

¶ 9 The trial court ruled:

> The law is clear, A.R.S. Section 14–1302 grants the Court jurisdiction over all subject matter relating to the estates of decedents, including construction of wills and determination of heirs and successors of decedents, and estates of protected persons. In this case, at the time the property of the estate was sold, the estate was under the jurisdiction of the Probate Court in a formal probate proceeding and a Personal Representative was appointed. The Trustee should have sought authority from the Probate Court or the Personal Representative before selling the estate property. The Court further finds that A.R.S. Section 14–3104 and A.R.S. Section 33–811(c) does [sic] not give the Trustee the authority to convert estate property without seeking authority from the Court or the Personal Representative.

The court denied American Savings' motion for summary judgment and granted AHCCCS's cross-motion. The court also ordered that American Savings return $34,838 to Stephenson's estate.

¶ 10 American Savings moved for reconsideration, arguing that the probate code contained no "automatic stay" comparable to the bankruptcy code that required American Savings to refrain from enforcing its security. American Savings also argued that it had no funds to return because it obtained the property through a credit bid. The court denied the motion, as well as AHCCCS's request for attorneys' fees.

¶ 11 The court entered judgment, and American Savings appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(J) (2003).

## DISCUSSION

¶ 12 Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c). In reviewing a motion for summary judgment, we determine de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000). In interpreting a statute, we look first to its language. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). If the statutory language is unambiguous, we give effect to the language and do not use other rules of statutory construction in its interpretation. *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). Statutory interpretation is an issue of law we review de novo. *State Comp. Fund v. Superior Court*, 190 Ariz. 371, 374, 948 P.2d 499, 502 (App. 1997).

¶ 13 American Savings argues that the trial court erred in finding that it was required to seek authority from the court or the personal representative before selling the property that secured its loan. American Savings contends that, under the probate statutes and case law, secured creditors have a choice of remedies after the death of a debtor, including the option of enforcing the security without first seeking permission. AHCCCS responds that the probate court has plenary power over the estate, and agrees that secured creditors have the option of enforcing their security separate from or instead of initiating probate. AHCCCS asserts, however, that secured creditors do not have the authority to ignore an open probate proceeding.

¶ 14 The Arizona Probate Code treats secured creditors differently from other claimants. Section 14–3104 provides that claims against the decedent's estate or successors cannot be brought until a personal representative has been appointed and that between the time of appointment and distribution of the estate, "all proceedings and actions to enforce a claim against the estate are governed by the procedure prescribed by this

chapter." A.R.S. § 14–3104 (2005). The statute concludes by expressly stating, "[t]his section has no application to a proceeding by a secured creditor of the decedent to enforce his right to his security except as to any deficiency judgment which might be sought therein." *Id.*

¶ 15 Based on the statutory language, secured creditors do not have to use probate proceedings to enforce any security, even after the appointment of a personal representative. AHCCCS argues that this statute means only that unsecured creditors cannot enforce a claim against the estate until the appointment of a personal representative, but that a secured creditor has a choice to enforce its security prior to the opening of probate or to proceed within probate. Such an interpretation ignores the fact that the plain language declaring the statute inapplicable to enforcement proceedings by secured creditors also makes inapplicable to secured creditors that portion of the statute declaring that the probate proceedings govern all actions to enforce a claim after the appointment of the personal representative.

¶ 16 Other probate statutes also treat secured creditors differently from other creditors. Section 14–3803 declares that all claims against a decedent's estate will be barred unless brought within a specific timeframe. A.R.S. § 14–3803(A) (2005). The statute, by its own terms, "does not affect or prevent ... any proceeding to enforce any mortgage, pledge or other lien upon property of the estate." *Id.* § 14–3803(D)(1). Similarly, A.R.S. § 14–3812, while prohibiting the execution of any judgment against the property of the estate, provides that the restriction "shall not be construed to prevent the enforcement of mortgages, pledges or liens upon real or personal property in an appropriate proceeding." A.R.S. § 14–3812 (2005).

¶ 17 The method of paying secured claims within a probate proceeding is addressed in A.R.S. § 14–3809 (2005). If a secured creditor surrenders the security, the secured claim is paid on the basis of the amount allowed. *Id.* If the creditor exhausts the security before receiving payment, the claim is paid on the amount allowed less the fair value of the security, and if the creditor does not have the right to exhaust the security or has not done so, the claim is paid on the amount allowed less the value of the security determined according to the terms of the agreement pursuant to which the security was delivered to the creditor or by the creditor and personal representative. *Id.* The personal representative may pay all or part of an encumbrance, renew any obligation secured by the encumbrance, or convey the assets to the creditor in satisfaction of the lien if doing so would be in the best interest of the estate. A.R.S. § 14–3814 (2005).

¶ 18 This court has previously considered §§ 14–3809 and 14–3814 in *Binder v. Fruth,* 150 Ariz. 21, 721 P.2d 679 (App.1986). In *Binder,* secured creditors submitted to the personal representative an unsecured claim for the amount due on a note; the note represented a loan to the decedent and had been secured by a deed of trust on a time share condominium. *Id.* at 22, 721 P.2d at 680. The personal representative conveyed the property securing the note and disallowed the claim. *Id.* The creditors returned the deed to the property and went forward with their claim against the estate. *Id.* The court found that the secured creditors had the right to choose their remedy. *Id.* at 24, 721 P.2d at 682.

¶ 19 We noted that under the common law rule, secured creditors have the power to choose a remedy after a debtor dies, unless limited by statute. *Id.* We found that A.R.S. §§ 14–3809 and 14–3814 did not limit that rule. *Id.* We also found that, although § 14–3814 gives the personal representative discretion to deal with secured assets, that power "cannot ... be in derogation of the secured creditor's right to either surrender the security and submit a claim for the indebtedness or exhaust the security and submit a claim for the deficiency." *Id.*

¶ 20 The probate statutes and *Binder* recognize that the secured creditor has the right to choose its remedy after a debtor's death. AHCCCS appears to agree that American Savings could choose to enforce its security. It argues, however, that the sale of encumbered estate property is subject to court supervision, and the proceeds of the

sale must be distributed pursuant to the priorities specified in A.R.S. § 14–3805 (2005). It is unclear whether AHCCCS is claiming that American Savings could not choose to conduct the trustee's sale or that it could conduct the trustee's sale but only under the court's supervision and the proceeds subject to distribution by the court pursuant to A.R.S. § 14–3805.

■ ¶ 21 As noted, under A.R.S. § 14–3104, the enforcement proceedings of a secured creditor are not subject to probate procedures. However, even had American Savings not "ignored the probate proceedings," under *Binder,* it had the right to elect to enforce its security. As pointed out by AHCCCS, the parties in *Binder* were acting within the parameters of the probate code. In that context, the court nevertheless found that the secured creditor, not the personal representative, had the right to determine the remedy that the secured creditor would employ.

¶ 22 AHCCCS's contention that the deed of trust sale was subject to court oversight and that the proceeds from the trustee's sale were subject to distribution under the probate code lacks support. Other than the probate court's general jurisdiction over the decedent's estate, AHCCCS has cited no statute in the probate code or any other authority to support the idea that the probate court has supervisory authority over a deed of trust sale that is governed by a separate statutory scheme. Nor has AHCCCS cited authority to support its position that the proceeds of the trustee's sale can be distributed to pay for other expenses of the decedent debtor to the detriment of the secured creditor.

¶ 23 Section 14–3805 establishes the priority by which claims are to be paid when an estate has insufficient assets to pay all claims in full. A.R.S. § 14–3805. The personal representative is to pay costs of administration, reasonable funeral expenses, debts and taxes with preference under federal law, reasonable and necessary medical expenses of the last illness of the decedent, debts and taxes

with preference under state law, and all other claims, in that order. *Id.* § 14–3805(A).

■ ¶ 24 AHCCCS argues that the priority of claims statute provides for secured creditors and protects their rights. The statute, however, does not distinguish between secured claims or other debts and in fact makes no mention of secured creditors at all.[2] *See* A.R.S. § 14–3805. In addition, § 14–3805 governs the priority of "claims." A secured creditor can enforce its security and need not file a claim. A.R.S. § 14–3803; *see also Harter v. Lenmark,* 443 N.W.2d 537, 540 (Minn.1989) (recognizing that under Minn.Stat. § 524.3–803 (1988), the Minnesota statute comparable to A.R.S. § 14–3803, "a mortgagee may proceed against property of the estate encumbered by a mortgage without the necessity of filing a claim"). Consequently, A.R.S. § 14–3805 has no applicability to a secured creditor that chooses to execute on its security rather than file a claim. To require a secured creditor to accept payment under the statute when it had not filed a claim would in effect force the secured creditor to take a particular remedy, which would be inconsistent with *Binder's* determination that secured creditors choose their remedy.

¶ 25 AHCCCS further argues that, as personal representative, it stepped into the shoes of the decedent. AHCCCS does not explain why this would affect American Savings' right to conduct a trustee's sale. As American Savings notes, the decedent-debtor could not have vetoed a trustee's sale, but only reinstated the obligation pursuant to A.R.S. § 33–813 (2005).

¶ 26 AHCCCS also contends that unsupervised deed of trust sales have potential for abuse. Even accepting this as true, AHCCCS does not contend that in this case American Savings did not comply with the statutory requirements governing the sale or that the price paid was grossly inadequate and should be set aside. *See In re Krohn,* 203 Ariz. 205, 212, ¶ 29, 52 P.3d 774, 781 (2002) (deed of trust sale can be set aside for gross inadequacy of price).

---

**2.** AHCCCS notes that California also has a statute governing priority of claims. The California statute, unlike its Arizona counterpart, specifical-

ly provides for payment of secured obligations. Cal. Prob.Code § 11420 (1996).

¶ 27 We find that the trial court erred in concluding that American Savings could not enforce its security interest in the property without first obtaining authorization from the probate court or personal representative. Accordingly, we reverse the trial court's judgment, and direct it to enter judgment for American Savings.

¶ 28 American Savings seeks attorneys' fees pursuant to A.R.S. § 12–349, which requires an award of fees as a sanction when a party brings or defends a claim without substantial justification, brings or defends a claim solely or primarily for delay or harassment, unreasonably expands or delays the proceeding, or engages in abuse of discovery. A.R.S. § 12–349(A) (2003). American Savings does not identify the subsection under which it seeks its award, but argues that AHCCCS knew its position was groundless. It would appear, therefore, that American Savings seeks fees on the basis that the claim was "without substantial justification." To receive a fee award pursuant to this provision, American Savings was required to show, by a preponderance of the evidence, that AHCCCS's claim constituted harassment, was groundless, and was not made in good faith. A.R.S. § 12–349(F); *Phoenix Newspapers, Inc. v. Dep't of Corr.*, 188 Ariz. 237, 244, 934 P.2d 801, 808 (App.1997). American Savings has not made such a showing. We therefore deny the request for fees.

¶ 29 We do award American Savings its appellate costs once it complies with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶ 30 American Savings, as a secured creditor, had the right to enforce its security even though probate had been opened. The trial court's ruling is reversed, and it is directed to enter summary judgment for American Savings.

CONCURRING: PHILIP HALL, Presiding Judge, and G. MURRAY SNOW, Judge.

