NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BMO HARRIS BANK, N.A., as legal successor to M&I MARSHALL &
ILSLEY BANK, *Plaintiff/Appellee*,

*v.*

EMILIE ANNE REID, Personal Representative for the ESTATE OF
ARTHUR MURRAY REID, THE ESTATE OF ARTHUR MURRAY REID,
*Defendants/Appellants*.

No. 1 CA-CV 14-0013
FILED 4-16-2015

Appeal from the Superior Court in Maricopa County
No.  CV2011-019281
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

Sacks Tierney P.A., Scottsdale
By Brian E. Ditsch, James W. Armstrong
*Counsel for Defendants/Appellants*

The Cavanagh Law Firm, P.A., Phoenix
By Philip G. Mitchell, Henry L. Timmerman, William F. Begley
*Counsel for Plaintiff/Appellee*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

---

**P O R T L E Y**, Judge:

¶1        This is an appeal from a judgment for breach of promissory note.  The Estate of Arthur Murray Reid and Emilie Reid, the Estate's personal representative (collectively, "the Estate"), contend that the superior court erred by finding the Estate liable to BMO Harris Bank, N.A. ("BMO") because BMO did not file a notice of claim within two years of Arthur Reid passing away and, as a result, the nonclaim statute, Arizona Revised Statutes ("A.R.S.") section 14-3803,[1] barred any deficiency judgment.  Because we find that the Arizona probate provisions are inapplicable, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2        Arthur Reid, a Canadian, bought 16.85 acres of undeveloped land in Cave Creek in 2005 as his sole and separate property.  He financed the purchase by borrowing $2,562,000 from M&I Bank and gave the bank a promissory note secured by a deed of trust on the property.  According to his son-in-law, Arthur planned to build custom and semi-custom homes on the property, but "the real estate market collapse halted those plans."  Arthur passed away in Phoenix on January 1, 2009.

¶3        Arthur's widow, Emilie Reid, filed a probate action in Alberta, Canada.  She was appointed the personal representative pursuant to Arthur's will by the Canadian court in December 2009.  Emilie, by her lawyers, advised M&I Bank of Arthur's death.  Emilie then filed a proof of foreign personal representative in the Maricopa County Superior Court's Probate Court and recorded it with the Maricopa County Recorder's Office in February 2010.  The proof of authority stated that Emilie was filing the document to allow her "as the domiciliary foreign Personal Representative to exercise, as to assets in this state, all powers of a local Personal

---

[1] We cite to the current version of the statute unless otherwise noted.

Representative."[2]  The probate matter continued in Canada, was resolved in September 2010, and the estate property was distributed to Emilie.

¶4          The bank, however, continued to send monthly statements addressed to Arthur and received monthly payments that were credited towards Arthur's note until August 2011.  After giving notice of default on August 9, 2011, BMO, as the successor to M&I Bank, filed this lawsuit against the Estate for breach of contract.  BMO also noticed a trustee's sale and subsequently purchased the Cave Creek property at the trustee's sale with a credit bid of $750,000.  The Estate answered the complaint and alleged that BMO's claim was barred because a claim had not been filed within two years of Arthur's death, all the property of the estate had been distributed and that any amount from the trustee's sale would reduce any amount due on the note.

¶5          Both parties moved for summary judgment.  The Estate argued that BMO's claim was barred because BMO had not filed a claim against the Estate within two years of Arthur's death and, as a result, A.R.S. § 14-3803(C) barred the deficiency action.  The Estate also argued that because BMO had not formally amended its complaint to allege a deficiency within ninety days after the trustee's sale it was precluded from pursuing its deficiency under A.R.S. § 33-814.  BMO, on the other hand, argued it was entitled to judgment because the Estate made payments on the note after Arthur's death and breached its obligation by failing to continue to make payments on or after August 1, 2011.

¶6          After oral argument, the superior court granted partial summary judgment for BMO.  The court found that the nonclaim statute was inapplicable, the fact that the estate may have been closed did not bar recovery against any proceeds of the estate for debts and that the lawsuit was timely under existing case law.  As a result, the court ruled that the Estate was liable to BMO for the deficiency, but that the amount of any deficiency would have to be determined after a fair-market-value hearing. In lieu of an evidentiary hearing, the parties mediated the fair market value of the property and stipulated to its value, which the court approved.

¶7          The Estate subsequently filed two motions for new trial on the issue of liability, which were denied.  The court then resolved the issue of

---

[2] The proof of authority was the only document filed in *In re Arthur Murray Reid*, PB 2010-000393 (Maricopa Cnty. Sup. Ct. 2010).  The language in the proof of authority combines the statutory language in A.R.S. §§ 14-4204 and -4205.

attorneys' fees and costs, entered judgment, and the Estate appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

**¶8**        The Estate challenges the superior court granting summary judgment and contends that it erred in interpreting the applicable law. In reviewing the ruling, we determine de novo whether any genuine dispute of material fact exists and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App. 2000). In interpreting a statute, we look first to its language. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). If the statutory language is unambiguous, we give effect to the language and do not use other rules of statutory construction in its interpretation. *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). Statutory interpretation is an issue of law we review de novo. *State Comp. Fund v. Superior Court*, 190 Ariz. 371, 374, 948 P.2d 499, 502 (App. 1997). And we can affirm summary judgment on grounds other than those found by the court. *See Ness v. Western Sec. Life Ins. Co.*, 174 Ariz. 497, 502, 851 P.2d 122, 127 (App. 1992).

**I.**

**¶9**        The Estate first argues that the superior court erred by concluding that A.R.S. § 14-3803(A) did not preclude BMO's deficiency claim. We disagree.

**¶10**        A promissory note secured by a deed of trust is a contract. *See National Bank v. Schwartz*, 230 Ariz. 310, 312, ¶ 7, 283 P.3d 41, 43 (App. 2012). Generally, absent a trustee's sale, a creditor has six years to bring an action on the promissory note. A.R.S. § 12-548(A); *see* A.R.S. § 33-814(A) (requiring that a creditor maintain a lawsuit for any deficiency balance ninety days after the trustee's sale). Here, BMO filed its breach-of-contract lawsuit two months after default and notice of default.

**¶11**        The Estate contends, however, that BMO's action is barred because BMO had two years after Arthur's death to file a claim with the personal representative or file a lawsuit under the Arizona Probate Code because the property was in Arizona. As a result, BMO's failure to file a claim within two years after Arthur's death bars its action. BMO disputes, however, the applicability of Arizona probate law given that the probate estate was in Canada, no ancillary action was filed in Arizona, and it was never provided with a creditors' notice under Arizona law.

¶12        We agree with BMO.  Even if we assume Chapter 3 of the Arizona Probate Code applies, in order to get the protection of Arizona law — especially the nonclaim statute — the Estate needed to have done more than merely file a proof of authority; the Estate needed to have notified BMO, a known creditor, pursuant to Arizona law.

¶13        Under A.R.S. § 14-3801,[3] a personal representative must notify anyone who could be considered a creditor of the estate, with the information about her appointment and address, and to advise the creditors that claims against the estate must be filed within either four months, if the notice is by publication, or sixty days, if the notice is directly to a known creditor.  The notice must also tell creditors to file a claim within the longer of the above time frames or the creditors' claim will be forever barred. A.R.S. § 14-3801.

---

[3] The statute states:

    A.  Unless notice has already been given under this section, at the time of appointment a personal representative shall publish a notice to creditors once a week for three successive weeks in a newspaper of general circulation in the county announcing the appointment and the personal representative's address and notifying creditors of the estate to present their claims within four months after the date of the first publication of the notice or be forever barred.

    B.  A personal representative shall give written notice by mail or other delivery to all known creditors, notifying the creditors of the personal representative's appointment. The notice shall also notify all known creditors to present the creditor's claim within four months after the published notice, if notice is given as provided in subsection A, or within sixty days after the mailing or other delivery of the notice, whichever is later, or be forever barred.  A written notice shall be the notice described in subsection A or a similar notice.

    C.  The personal representative is not liable to a creditor or to a successor of the decedent for giving or failing to give notice under this section.

5

¶14         If a creditor receives proper notice, whether before or after the appointment of a personal representative, the creditor must either file a timely written claim with the personal representative or, within the same time limits, file a lawsuit against the personal representative for payment of the claim. *See* A.R.S. § 14-3804(1)-(2*); In re Estate of Van Der Zee*, 228 Ariz. 257, 259, ¶ 11, 265 P.3d 439, 441 (App. 2011). Moreover, if a creditor does not file a timely claim after receiving proper notice, the creditor will be barred from collecting the claim two years after the decedent passed away. A.R.S. § 14-3803(B); *Ray v. Rambaud*, 103 Ariz. 186, 190, 438 P.2d 752, 756 (1968); *In re Estate of Barry*, 184 Ariz. 506, 508-09, 910 P.2d 657, 659-60 (App. 1996).

A.

¶15         Here, there is no evidence the Estate provided a notice to BMO that if it failed to file a claim with Emilie its claim would be forever barred. *See* A.R.S. § 14-3801(B). The record shows that the Estate mailed four letters to the bank in January and February 2009 advising it about Arthur's death and seeking information about the value or balances in his checking account, money-market account and two credit cards, whether Arthur had any additional credit cards and if he had a safety deposit box, and later seeking release of any funds being held in the checking and money-market account. The letters did not include any type of notice directing BMO to file a claim with Emilie within sixty days, or any other time frame, given that the bank was a known creditor. Likewise, the letters did not state that failing to file a claim within the applicable time period would result in BMO's claim being forever barred. *See* A.R.S. § 14-3801(B) ("The notice shall also notify all known creditors to present the creditor's claim . . . or be forever barred.").

¶16         Because there is no evidence that the Estate notified BMO that it needed to file a claim or its claim (deficiency) would be forever barred, even though current, the nonclaim statute, A.R.S. § 14-3803, does not bar BMO's lawsuit. *Cf. Ray*, 103 Ariz. at 187, 438 P.2d at 753 (noting that the personal representative properly published the notice to creditors, but no claim was timely presented); *In re Estate of Randall,* 441 P.2d 153, 154 (Colo. 1968) (recognizing that the personal representative properly published notice to creditors, yet the creditor filed the claim sixteen days late); *see also* State Bar of Arizona, *Arizona Probate Code Practice Manual*, §§ 7.12.1(3), 7.12.6 (5th ed. 2014) (noting that "if notice is published or mailed," a claim may be

barred unless properly and timely presented).[4] Consequently, the superior court did not err by ruling that the nonclaim statute was inapplicable.

B.

**¶17** Equally unpersuasive is the Estate's argument that BMO, as a creditor, could have sought appointment as the local personal representative forty-five days after Arthur's death or after the Canadian probate case was closed under A.R.S. §§ 14-3202, -3301(A)(7). Although our case law notes that unsecured creditors have successfully sought appointment as personal representatives, *see, e.g.*, *In re Estate of Stephenson*, 217 Ariz. 284, 285, ¶¶ 3-4, 173 P.3d 448, 449 (App. 2007) (AHCCCS sought and was appointed personal representative to recover medical benefits paid before the decedent's death), *In re Estate of Zaritsky*, 198 Ariz. 599, 601, ¶¶ 1-3, 12 P.3d 1203, 1205 (App. 2000) (unsecured creditor successfully sought informal appointment as personal representative), the Arizona Probate Code does not require creditors, secured or unsecured, to file for local administration in order to preserve their claim when a foreign personal representative did not properly notify creditors under Arizona law. *See generally In re Estate of Stephenson*, 217 Ariz. at 287, ¶ 15, 173 P.3d at 451 (stating "secured creditors do not have to use probate proceedings to enforce any security, even after the appointment of a personal representative").

**II.**

**¶18** The Estate also argues that the court erred by finding that BMO was not required to amend its complaint to plead a claim for a

---

[4] The Estate urges us to follow other jurisdictions that have adopted the Uniform Probate Code and barred untimely claims with the nonclaim provision, especially *In re Estate of Ongaro*, 998 P.2d 1097 (Colo. 2000) and *In re Estate of Earls*, 262 P.3d 832 (Wash. App. 2011). Neither case supports the Estate's argument given the facts of this case. In *Earls*, the personal representative published notice to the creditors and sent a notice to the known creditor by certified mail, but the creditor did not file or present a creditor's claim before the filing period expired and, as a result, was barred from pursuing a claim "even where the claim is not yet due." *Earls*, 262 P.3d at 833, 837, ¶¶ 4-5, 21. Similarly, in *Ongaro*, the decedent's estate was probated locally and, although notice was not given to the bank as a known creditor, the estate published a notice to creditors in the local newspaper. 998 P.2d at 1099. As a result, the bank's failure to take action within the Colorado nonclaim statute barred its claim. *Id.*

deficiency judgment within the ninety-day period in A.R.S. § 33-814(A). Specifically, the Estate contends that BMO's complaint failed to provide notice that the action was for a deficiency balance. We disagree.

**¶19** Section 33-814(A) provides that "within ninety days after the date of sale of trust property under a trust deed . . . an action may be maintained to recover a deficiency judgment against any person . . . liable on the contract for which the trust deed was given as security . . . ." Subsection D states that "[i]f no action is maintained for a deficiency judgment within the time period prescribed in subsection[] A . . . the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the obligation and no right to recover a deficiency in any action shall exist." A.R.S. § 33-814(D). In *Valley Nat. Bank of Arizona v. Kohlhase*, we examined a similar argument, and noted that an action on a debt is generally indistinguishable from an action for deficiency even if the creditor did not amend the complaint to allege a deficiency after the trustee's sale. 182 Ariz. 436, 439, 897 P.2d 738, 741 (App. 1995). In fact, we stated, "[w]hen a creditor initiates an action on a debt *before* the trustee's sale, the debtor receives early notice that the creditor will pursue the debtor if any subsequent trustee's sale results in a deficiency." *Id.*; *see Resolution Trust Corp. v. Freeway Land Investors*, 798 F. Supp. 593 (D. Ariz. 1992) (holding that a lawsuit to collect on a promissory note before a trustee's sale is within the ninety day period required under A.R.S. § 33-814 to maintain an action for a deficiency balance).[5] We also noted in *Schwartz* that the debt and any potential recovery flows from the promissory note. 230 Ariz. at 312-13, ¶¶ 7-9, 283 P.3d at 43-44 (noting that a lawsuit to recover on the promissory note, which is the primary source of the debt, is the basis for a deficiency action, and the trustee's sale is ancillary to the collection of the debt).

**¶20** Here, although BMO's complaint was an action on the note, the evidence in the record clearly reveals that the Estate had notice of the trustee's sale and that BMO was seeking a deficiency balance, *i.e.*, the difference between the trustee's sale price and the outstanding promissory note balance. In answering the complaint, the Estate asserted that "[BMO] has noticed a trustee's sale with respect to the Property and any amount received by [BMO] through the trustee's sale process, or the fair market value of the Property, whichever is greater, will work to reduce any amount due on the Note." Therefore, the superior court did not err by finding that

---

[5] Although the Estate urges us to overrule *Kohlhase*, we see no reason to overrule long-standing precedent.

A.R.S. § 33-814 did not bar BMO from pursuing a deficiency balance after the trustee's sale.[6]

## ATTORNEYS' FEES AND COSTS

**¶21** BMO has requested attorneys' fees incurred in this appeal based on the promissory note and A.R.S. § 12-341.01. Because BMO prevailed on appeal, we will award BMO reasonable attorney's fees and costs on appeal upon its in compliance with ARCAP 21(c).

## CONCLUSION

**¶22** Based on the foregoing, we affirm the judgment.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[6] The Estate also contends that BMO's service of process on Emilie was ineffective because she was no longer the Estate's personal representative after the Canadian probate was closed. The argument, however, was not first raised to the superior court before or after the answer was filed. As a result, we will not consider it for the first time on appeal. *See Orfaly v. Tucson Symphony Society,* 209 Ariz. 260, 265, ¶ 15, 99 P.3d 1030, 1035 (App. 2004) (arguments presented for the first time on appeal are untimely and deemed waived); *see also* Ariz. R. Civ. P. 12(h)(1) (providing that a party waives an objection to insufficient service of process when the party does not raise it in the answer or first responsive motion).