23CA0479 Peo v Brooks 02-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0479
Arapahoe County District Court Nos. 19CR3108 & 19CR3199
Honorable Joseph Whitfield, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Loretta Irene Brooks,

Defendant-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE GROVE
Harris and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

Philip J. Weiser, Attorney General, John T. Lee, First Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, Loretta Irene Brooks, appeals the district court's order revoking her probation and sentencing her to a total of six years in the custody of the Department of Corrections (DOC). We affirm.

## I. Background

¶ 2 As part of a plea agreement, Brooks pleaded guilty to charges in two separate cases. In the first case (the burglary case), the arrest affidavit alleged Brooks tried to use a large rock to break a pawnshop's glass display case containing a handgun. Later that day, Brooks entered an unoccupied home, where she stole a checkbook and a vehicle. The next day, she attempted to cash one of the stolen checks. In the second case (the menacing case), the arrest affidavit alleged that Brooks had gotten into a verbal and physical altercation with her twelve-year-old son during which she choked and hit him.

¶ 3 As a result of her guilty pleas, Brooks was convicted of one count of criminal mischief, one count of second degree burglary, and one count of menacing. Acknowledging that Brooks was struggling with substance use when the crimes occurred, the

district court sentenced Brooks to four years of probation for each case, to be served concurrently.

¶ 4      Approximately one year later, the probation department filed a complaint for revocation in both cases, alleging Brooks had (1) missed six appointments with her probation officer, (2) failed to submit eight urinalysis tests, (3) tested positive for alcohol or drugs on four occasions, and (4) failed to make court-ordered payments. The probation department recommended that Brooks be screened for community corrections.

¶ 5      At the revocation hearing, Brooks admitted violating the terms of her probation.  Although Brooks entered an "open plea," the prosecutor acknowledged that she had made progress on her substance abuse issues while the revocation complaint was pending, so the parties reached an agreement to request revocation and reinstatement of Brooks's sentence to probation.

¶ 6      The district court resentenced Brooks to four years in the DOC for the burglary case and two years in the DOC for the menacing case, but it suspended both sentences pending the successful completion of three years of probation — one year less than Brooks's original term.  The court imposed all of the same terms

and conditions of probation while adding a requirement that she complete a sober living facility program. The terms included "submit[ting] to drug and alcohol testing as directed by the probation officer" and "report[ing] to the probation officer for appointments, as directed by the Court or the probation officer." Brooks agreed to these terms.

¶ 7    At the hearing, the district court emphasized the level of compliance that Brooks would need to demonstrate in order to be successful with the reinstated term of probation. The court ordered Brooks to "routinely check in with probation at their request and at their order," underscoring that the manner and frequency of these routine checks was up to the probation department. It also emphasized Brooks must "strict[ly] compl[y]" with her probation terms. Strict compliance included fulfilling

> simple requests like checking in, or [urinalysis tests], or any other form of condition that probation has. The defendant must comply with these terms in order to be successful on probation . . . . So if she fails to comply, she will face the terms of each case [and] any prison sentences suspended will be deemed available to the Court to run concurrent or consecutive . . . .

¶ 8     While the court expressed hope that Brooks would comply with probation, it left open the possibility of imposing the suspended DOC sentences consecutively in the event of a second revocation.

¶ 9     The probation department filed a second petition for revocation less than two months later.  It alleged four violations: (1) a new Arapahoe County case alleging motor vehicle theft, (2) a missed probation appointment, (3) a missed urinalysis test, and (4) failure to make timely court-ordered payments.  The probation department again recommended Brooks be screened for community corrections.

¶ 10    At the outset of the revocation hearing, the prosecution withdrew the motor vehicle theft allegations.  At the conclusion of the hearing, the court found that the prosecution had proved that Brooks missed a probation appointment and a urinalysis test, but it found that the prosecution had not proved that Brooks was behind on payments.  The court revoked Brooks's probation and imposed the suspended sentences — two years for the menacing case and four years for the burglary case — ordering them to be served consecutively.

¶ 11 Brooks appeals the revocation order. She claims the court erred by (1) basing its decision to revoke her probation in part on the motor vehicle theft allegations that the prosecution withdrew before the hearing, and (2) finding that she had, in fact, missed a urinalysis test.

## II. Standard of Review and Applicable Law

¶ 12 The district court must decide two issues in a revocation proceeding: (1) whether the probationer has violated a valid condition of her probation and, if so, (2) what action is appropriate in light of the violation. *People v. Ickler*, 877 P.2d 863, 866 (Colo. 1994); § 16-11-206(5), C.R.S. 2024.

¶ 13 The court may revoke probation when a probationer violates any condition of probation. *Ickler*, 877 P.2d at 866. Generally, the prosecution must prove the probationer has violated the condition by a preponderance of evidence standard. § 16-11-206(3). However, if the alleged violation is the commission of a criminal offense, then the prosecution must establish the violation beyond a reasonable doubt unless the defendant has already been convicted of the offense. *Id.* A probationer's violation of the conditions of probation serves as an indication that she is either unwilling to

rehabilitate or incapable of reintegration into society at that point, and remedial action by the court might be necessary in the interest of the probationer and society. *People v. Moses*, 64 P.3d 904, 907 (Colo. App. 2002).

¶ 14 A probationer is entitled to certain procedural due process rights in revocation proceedings. *People v. Elder*, 36 P.3d 172, 174 (Colo. App. 2001). Due process in the revocation setting only requires (1) written notice of the alleged probation violations; (2) disclosure to the probationer of evidence against her; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; and (5) a written or oral statement on the record made by the fact finder as to the evidence relied on and the reasons for revoking probation. *Byrd v. People*, 58 P.3d 50, 55-56 (Colo. 2002).

¶ 15 Whether a court adequately stated its reasons for revoking probation and the evidence it relied on is a legal question we review de novo. *People v. Lientz*, 2012 COA 118, ¶ 43. However, once a violation is found, the decision to revoke probation is within the district court's discretion. *Elder*, 36 P.3d at 173; *see also* § 16-11-

6

206(5). A decision to revoke probation will not be disturbed unless the district court's judgment is against the manifest weight of the evidence. *Elder*, 36 P.3d at 174.

### III. Motor Vehicle Theft

¶ 16    Brooks contends the district court violated her due process rights by basing its revocation order in part on an allegation that she had committed aggravated motor vehicle theft. Even though the prosecution agreed not to proceed on this count at the revocation hearing and presented no evidence supporting it, Brooks argues that the district court nonetheless relied on the allegation when revoking her probation and deciding to impose consecutive sentences. We perceive no error.

### A. District Court's Findings

¶ 17    At the conclusion of the second revocation hearing, the court ruled in two distinct phases. First, after acknowledging that the prosecution had withdrawn Count 1 (the motor vehicle theft count), it found that the prosecution had proved Counts 2 (missed appointment) and 3 (missed urinalysis). The court found that the prosecution had not proved Count 4 (insufficient payments).

¶ 18    The court then "turn[ed] to the parties for any sentencing record either wishes to make."  After considering arguments from both counsel, the court announced its decision to impose the previously suspended sentences consecutively.  While explaining its decision, the court mentioned the motor vehicle theft allegations.

> [W]hether it's missed tests, again, or missed appointments or anything else that I find -- and, in this case, this Court is aware that there is a new law violation or that the allegations are that the Defendant, within a month's time or so of our sentencing in November, after she heard from me, after she heard my voice, after she stood and looked me in the eye and heard what I was going to say and what I ultimately did say and order, was somehow found in a stolen vehicle, alleged to have jumped in a moving vehicle -- running vehicle -- pardon me -- that was being driven by a security officer who responded to some location.
>
> And when law enforcement found her, she was not far from this vehicle, found in the back seat of an Uber with a dog that had been -- belonged to the owner of the vehicle, and the Defendant, upon being Mirandized and spoken to by law enforcement, admitted it.

¶ 19    Defense counsel objected (and asked that the judge recuse himself), arguing that the court had "relied on evidence not in the record, including allegations of a new law violation," in reaching its

8

decision. The court denied the motion, confirming that it "relied on information that it heard in the hearing for the hearing," and that, at sentencing, it was permitted to look to "anything presented by the parties," as well as "the Court's own file."

## B. Analysis

¶ 20 Based on our review of the record, we do not agree with Brooks's claim that the court based its decision to revoke her probation — even in part — on an uncharged and unproven criminal allegation. To the contrary, the court acknowledged that the prosecution had withdrawn Count 1 — and, when defense counsel questioned whether the facts associated with Count 1 had factored into its revocation decision, the court confirmed that it had only considered the motor vehicle theft allegations for the purposes of sentencing. Even if the court did not make clear its reasons for mentioning the motor vehicle theft allegations during the sentencing colloquy itself, any ambiguity was resolved by the court's subsequent statement that it had only raised the issue for the purposes of sentencing. *See People v. Newman*, 91 P.3d 369, 372 (Colo. 2004) (holding that sentencing court may, in evaluating the character of the offender, consider conduct for which the

offender was never charged). We are not in a position to second-guess the court's on-the-record characterization of its own decision-making process, especially when it explained its process mere moments after it had ruled.

¶ 21     Still, Brooks points to *People v. Janke*, 720 P.2d 613, 616 (Colo. App. 1986), for the proposition that the court violates a defendant's due process rights when it considers an uncharged and unproven crime as part of its sentencing decision. *Janke* is distinguishable for several reasons, the first of which is that it was not a probation revocation case. In *Janke*, the sentencing court surmised, without any supporting evidence, that the defendant had raped other victims, and as a result of that supposition imposed a sentence outside the presumptive range. *Id.* Here, in contrast, Brooks was sentenced in the presumptive range. When deciding to impose a sentence in that range, the court was permitted to consider conduct for which Brooks was never charged. *See Newman*, 91 P.3d at 372. Indeed, once the court found a violation, it had the discretion to "impose any sentence or grant any probation" that "might originally have been imposed or granted."

§ 16-11-206(5); *see also People v. Santana*, 961 P.2d 498, 500 (Colo. App. 1997).

¶ 22     Therefore, the trial court did not err by considering the allegations of new criminal conduct for the limited purpose of sentencing on the violations.

## IV.  Sufficiency of the Evidence

¶ 23     Brooks argues that the prosecution did not prove Count 3 of the revocation complaint, which alleged that she violated a condition of her probation by failing to properly submit a urinalysis test.  We need not resolve this question because we conclude that any error was harmless.

¶ 24     "Where one or more bases for revoking probation are set aside on appeal, the revocation remains valid provided at least one violation is sustained." *People v. Loveall*, 231 P.3d 408, 416 (Colo. 2010).  We may affirm a revocation order when "the record clearly shows the trial court would have reached the same result even without consideration of the improper factors." *Id.*

¶ 25     The record clearly shows that the district court would have revoked Brooks's probation regardless of its finding on Count 3. There is no dispute that Brooks violated the terms and conditions of

11

her reinstated probation by missing the first appointment of her second term because she relapsed and had been "kicked out" of her sober living facility. And while one missed appointment or one relapse, in isolation, might not have been enough to support a revocation, the court made clear that Brooks's missed appointment was part of a pattern of noncompliance stretching back to her first term of probation that included many missed appointments along with missed and failed urinalysis tests. This pattern of noncompliance, the court explained, had given it "reservations about accepting the disposition" at the first revocation hearing and, consistent with that disposition, reinstating Brooks's probation. But the court agreed to do so on the condition that Brooks would strictly comply going forward. Despite the court's admonitions, Brooks almost immediately violated the terms of her reinstated probation by failing to appear for her first appointment.

¶ 26 Given the court's expressed reluctance to accept the first reinstatement, its requirement that Brooks strictly comply with the conditions of her second probationary term, and Brooks's failure to strictly comply from the outset, we conclude that the district court would have revoked Brooks's probation based on her failure to

12

attend the first appointment of her second probation term regardless of her compliance with urinalysis testing requirements. Accordingly, we will not disturb the district court's revocation decision. *See id.*

## V.    Disposition

¶ 27    The order is affirmed.

JUDGE HARRIS and JUDGE PAWAR concur.