[No. 65626-1-I.   Division One.   October 24, 2011.]

*In the Matter of the Estate of* STEPHEN EARLS.

HINES REIT SEATTLE DESIGN CENTER, LLC, *Appellant*, v. BARRY WOLF, *as Personal Representative, Respondent.*

448

*Ladd B. Leavens* (of *Davis Wright Tremaine LLP*), for appellant.

*Peter S. Ehrlichman* and *Ieva Butkute* (of *Dorsey & Whitney LLP*), for respondent.

¶1 GROSSE, J. — Washington's nonclaim statute, RCW 11.40.010, encompasses every species of liability a personal representative can be called upon to pay out of the estate's general funds. This includes claims arising out of obligations that the decedent incurred during his or her lifetime but are not due at the time of the decedent's death or at the expiration of the creditor's claims filing period. Here, the

decedent's obligation under the personal guaranty was an obligation he incurred during his lifetime. It was not an obligation the personal representative incurred during the administration of the decedent's estate. Accordingly, in order for the creditor to recover on a claim to enforce the personal guaranty, the creditor was required to comply with the nonclaim statute. Because the creditor failed to do so, it cannot recover on its claim. We affirm the trial court's dismissal of the creditor's petition to enforce the personal guaranty.

## FACTS

¶2 The facts are not in dispute. The decedent, Stephen Earls, was president of the Stephen Earls Corporation. On March 15, 2005, the corporation, as tenant, and Bay West Design Center LLC, as lessor, entered into a 10-year lease of premises at the Seattle Design Center. Bay West is predecessor in interest to appellant Hines REIT Seattle Design Center LLC (Hines).

¶3 Earls signed a personal guaranty in which he guaranteed to the lessor and its successors and assigns "the full and timely performance and observance by Tenant of all the terms and conditions of the Lease to be performed and observed by Tenant." Earls' liability under the guaranty was primary and absolute, allowing the lessor to proceed against him without proceeding against the corporation. The guaranty also provides that in the event of Earls' death, the guaranty would remain in full force and effect and be binding upon Earls' estate.

¶4 Earls died on October 17, 2008. Respondent Barry Wolf was appointed personal representative of Earls' estate the same day. At the time of Earls' death, the Stephen Earls Corporation was in compliance with the lease. On October 24, 2008, Wolf published a notice to creditors and, on October 30, 2008, sent the notice to Hines by certified mail. The period for filing creditor's claims expired on February

24, 2009. Hines did not file or present a creditor's claim before the filing period expired.

¶5 In August 2009, the Stephen Earls Corporation partially defaulted under the lease. In January 2010, Hines filed a petition under the Trust and Estates Dispute Resolution Act (TEDRA), chapter 11.96A, seeking to enforce the personal guaranty. The Estate argued that Hines' petition was barred because Hines failed to timely file a creditor's claim. A superior court commissioner agreed with the Estate and entered an order dismissing Hines' petition with prejudice and awarding the Estate its reasonable attorney fees and costs. Hines moved for revision of the commissioner's ruling. The superior court denied Hines' motion and ordered Hines to pay the Estate's reasonable attorney fees and costs incurred in connection with the motion for revision. Hines appeals.

ANALYSIS

*Standard of Review*

¶6 The parties agree that the standard of review is de novo. Where the relevant facts are undisputed and the parties dispute only the legal effects of those facts, the standard of review is de novo.[1] Also, we review questions of statutory interpretation de novo.[2]

*Nonclaim Statute*

¶7 Washington's nonclaim statute provides, "A person having a claim against the decedent may not maintain an action on the claim unless a personal representative has been appointed and the claimant has presented the claim as set forth in this chapter."[3] The statute is mandatory and is

---

[1] *Happy Bunch, LLC v. Grandview N., LLC*, 142 Wn. App. 81, 88, 173 P.3d 959 (2007), *review denied*, 164 Wn.2d 1009 (2008).

[2] *State v. Bunker*, 169 Wn.2d 571, 577, 238 P.3d 487 (2010).

[3] RCW 11.40.010.

strictly construed; compliance with its requirements is essential to recovery.[4]

¶8 The parties agree that the period for filing creditor's claims against Earls' estate expired four months after the date of first publication of the notice to creditors and that Hines did not file a creditor's claim within that four-month period.[5] The dispute is whether Hines was required to file a creditor's claim where Earls' obligation under the personal guaranty, which he executed during his lifetime, did not arise until after the claims filing period expired. Based on well-settled authority from the Washington Supreme Court, we hold that Hines was so required.

¶9 One such authority is *James v. Corvin*,[6] in which a tenant entered into a five-year lease with the lessors. Less than a year into the lease term, the tenant died. The administratrix of the tenant's estate properly gave notice to creditors. The administratrix continued to pay rent for two years, but then stopped. She missed three monthly rent payments and then abandoned the premises before expiration of the five-year term. The lessors never served or filed a creditor's claim, but brought an action against the administratrix to recover the unpaid rent and damages for breach of the lease with respect to the unexpired term. The administratrix admitted owing the unpaid rent, but disputed liability for damages for the unexpired term of the lease. The Supreme Court reversed the trial court's judgment in favor of the lessors on the damages claim because of the lessors' failure to file a creditor's claim. The court's reasoning is applicable here:

> The claim for damages for the unexpired portion of the lease is not an obligation incurred by the administratrix in the course of her administration of the estate. It arises out of a contractual obligation incurred by [the tenant/decedent] and is

[4] *Messer v. Estate of Shannon*, 65 Wn.2d 414, 415, 397 P.2d 846 (1964).

[5] *See* RCW 11.40.051(1)(a).

[6] 184 Wash. 356, 51 P.2d 689 (1935).

governed by the statute of non-claim. By the terms of the lease, he obligated himself, his heirs, executors, administrators and assigns to pay $4,860 for the premises for a term of five years, covering the time involved in this action. A claim for damages for a breach of that contract arises out of that obligation, requiring, as a prerequisite to a suit thereon, that the claim be served on the administratrix and filed with the clerk of the court.[7]

¶10 Here, Earls incurred a contractual obligation under the personal guaranty during his lifetime. His liability under the guaranty was primary, such that Hines could proceed against Earls for any breach of the lease by the tenant without first proceeding against the tenant. Further, the guaranty specifically stated that it would remain in full force and effect upon Earls' death and be binding on his estate. Hines' claim against Earls for the tenant's breach of the lease arose out of Earls' obligation under the guaranty; it was not an obligation his estate incurred. Under *James*, Hines had to file and serve a creditor's claim in order to maintain an action on that claim.

¶11 Hines argues that *James* is distinguishable because no separate guaranty relationship existed in that case and the tenant was obligated to pay rent during his lifetime, whereas here, Earls did not have a present obligation to pay during his lifetime. But because the personal guaranty was primary and absolute, and permitted Hines to proceed directly against Earls without first proceeding against the corporation for breach of the lease, this distinction is not significant. The significant factor is that Hines' claim against Earls arose out of a contractual obligation Earls incurred during his lifetime.

¶12 The court in *James* stated that the case before it was similar to *Horton v. McCord*.[8] In that case, while the decedent, Williams, was alive, he entered into a contract

---

[7] *James*, 184 Wash. at 359 (emphasis omitted).

[8] 158 Wash. 563, 291 P. 717 (1930).

with the plaintiff, Horton, under which Williams purportedly guaranteed Horton steady employment at Williams' factory for the remainder of Horton's life. Williams died in May 1924. In June 1924, his executors published a notice to creditors. In July 1928, Horton was discharged from his employment at Williams' factory. Horton filed a wrongful discharge action against the executors.

¶13 Horton argued that during the creditor filing period and for some time thereafter, his claim was of such contingent character that his right of action on that claim was not dependent on his filing a creditor's claim. The Supreme Court disagreed, stating:

> It seems plain that Horton's claim, though contingent up until the time of his discharge by the executors, arises, if at all, out of a contractual obligation incurred by Williams during his lifetime, and therefore is not an obligation incurred by the executors in the course of their administration of the estate.
>
> . . . [S]uch a claim must, as a prerequisite to the claimant's right to sue and recover thereon against the property of the deceased being administered upon, be timely presented to the executor or administrator of the estate the same as any other claim arising out of a contractual or other obligation of the deceased during his lifetime.[9]

¶14 Similarly here, Hines' claim was contingent up until the time the Stephen Earls Corporation breached its obligations under the lease, which was after Earls' death. But, the claim arose out of a contractual obligation Earls incurred during his lifetime and is not an obligation Wolf incurred in the course of the administration of Earls' estate. Accordingly, following *Horton*, the claim was subject to the nonclaim statute. Hines again argues that the case is distinguishable because it involved a current obligation of the decedent during his life. As in *James*, however, the significant similarity between this case and *Horton* is that

---

[9] *Horton*, 158 Wash. at 565-66; *see also Davis v. Shepard*, 135 Wash. 124, 125, 237 P. 21 (1925) (stating that the nonclaim statute applies to claims of every kind and nature, both those established and contingent).

the contractual obligation at issue was one the decedent incurred during his lifetime. As such, Hines' claim to enforce the contractual obligation is subject to the nonclaim statute.

¶15 Other cases have reached a similar result. For example, in *Andrews v. Kelleher*,[10] the decedent guaranteed bonds which had not matured at the time he died. The trust company, as trustee of the bonds and representative of the bondholders, filed a claim based on the guaranty. The court held that even though the bonds were not due at the time the decedent died, the trust company's claim was a contingent claim and was therefore governed by the nonclaim statute. In *Seattle Trust Co. v. Zbinden*,[11] a mortgagee filed a contingent claim against the decedent's estate for the amount of any deficiency that might result after the sale of the property covered by the mortgage, in the event the indebtedness was not paid at its maturity. At the time the mortgagee filed the contingent claim, the mortgage was current, and no payment was owed to the mortgagee. Nevertheless, the court held that even though the mortgage was current at the time the decedent died because the mortgage obligation was incurred when the decedent was alive, the nonclaim statute applied and the mortgagee had to file a claim before the debt became due and payable.

¶16 The case of *Barto v. Stewart*[12] involved a claim by the receiver of the insolvent Bank of Puyallup against the estate of J.P. Stewart. The bank had been declared insolvent in June 1893. Stewart, who owned 10 shares of the bank's capital stock, died in January 1895. The executor and executrix filed a notice to creditors, and the filing period expired in February 1896. The bank's receiver did not file a creditor's claim. In August 1897, it was determined that $39,000 remained owing the bank's creditors after the

---

[10] 124 Wash. 517, 214 P. 1056 (1923).

[11] 170 Wash. 692, 17 P.2d 629 (1932).

[12] 21 Wash. 605, 59 P. 480 (1899).

receiver had distributed the bank's property. In September 1897, the receiver filed a demand for an amount assessable against Stewart's shares of stock. The executor and executrix rejected the claim, and the receiver filed an action in superior court.

¶17 The receiver argued that during the claim filing period, there was no way to ascertain what, if anything, would be due from Stewart's estate and that filing a claim under such circumstances would be "an idle ceremony."[13] The Supreme Court disagreed, reasoning that because the statute referred to claims "not yet due," it would be unreasonable to suppose that the legislature made provision for the payment of contingent claims without intending to also provide that those claims should be presented for payment. The court concluded that the word "claim" includes "every species of liability which the executor or administrator can be called on to pay, or to provide for the payment of, out of the general fund belonging to the estate" and that the word "due" applied to all claims, whether due, to become due, or contingent.[14] Finding that the nonclaim statute applied, the court reversed a judgment against the executor and executrix and held that the receiver's action was barred because it failed to timely present the claim against Stewart's estate.

¶18 The current creditor's claims statutes retain the reference to claims "not yet due."[15] Under *Barto* and the other Supreme Court authority, it is clear that the nonclaim statute applies to Hines' claim to enforce Earls' personal guaranty. Because Hines failed to file a creditor's claim within the prescribed time, it is barred from recovering under the guaranty even though the Stephen Earls Corporation was not in default under the lease at the expiration of the claims filing period.

---

[13] *Barto*, 21 Wash. at 614.

[14] *Barto*, 21 Wash. at 616.

[15] *See, e.g.*, RCW 11.40.070(1)(e) (requiring that a claim include information about whether "the claim is secured, unliquidated, contingent, or not yet due").

¶19 Hines argues that two Court of Appeals cases compel reversal of the trial court's dismissal of its petition. We disagree. One case on which Hines relies is *Foley v. Smith*,[16] in which the Foleys contracted with a purchaser to sell their property. The Foleys later conveyed the property by warranty deed to another purchaser, the Smiths. The first purchaser sued the Foleys for specific performance. While the specific performance action was pending, Mr. Foley died. Mrs. Foley published a notice to creditors. The Smiths did not file a creditor's claim within the filing period. After the filing period expired, the trial court entered a decree for specific performance in favor of the first purchaser. As a result of this decree, the Smiths were divested of all title to and interest in the property. Later, the Smiths filed an action for breach of covenant against Mrs. Foley. Mrs. Foley argued that the Smiths could not recover because they failed to file a creditor's claim in the probate of Mr. Foley's estate. The court held that it was unnecessary for the Smiths to file a creditor's claim because given that the breach of covenant did not take place until after the decree of specific performance became final, the claim did not arise until after Mr. Foley's death.

¶20 *Foley* is distinguishable from the case before us. In *Foley*, no debt obligation running from Mr. Foley to the Smiths existed at the time Mr. Foley died. Rather, Mrs. Foley and the estate were defending the Smiths' title before the court entered the decree of specific performance. It was not until the decree was entered and the Smiths' title was voided that the obligation to the Smiths arose. In this case, by contrast, Hines' claim under Earls' personal guaranty arose out of a contractual obligation that Earls incurred during his lifetime. Because *Foley* is distinguishable, it does

---

[16] 14 Wn. App. 285, 539 P.2d 874 (1975).

not compel the reversal of the trial court's dismissal of Hines' TEDRA petition.[17]

¶21 Hines also relies on *Runkle v. Bank of California*.[18] The *Runkle* court's discussion of the nonclaim statute is arguably dicta, but even if not dicta, we decline to follow it because the court's analysis is incorrect. The court in *Runkle* ignored the Supreme Court authority establishing that the nonclaim statute applies to a claim which arises out of a contractual obligation incurred during the decedent's lifetime, and the court's conclusion is contrary to this authority. Further, as noted by another court,[19] the *Runkle* court's analysis is contrary to the structure of the probate code, which suggests that a claim must be filed or it will be barred, even where the claim is not yet due.[20] *Runkle* is inconsistent with controlling Supreme Court authority and was wrongly decided.

*Attorney Fees and Costs*

■■ ¶22 TEDRA gives the superior court and appellate courts the discretion to award attorney fees and costs to any party "in such amount and in such manner as the court determines to be equitable."[21] The personal guaranty Earls signed also contains an attorney fee provision: "Guarantor shall pay all costs and expenses paid or incurred by Landlord in enforcing either the Lease or this Guaranty, including court costs and a reasonable amount for legal services performed by counsel, whether employed or retained by Landlord."

¶23 The Estate argues that principles of fairness and equity support an award of fees and costs under TEDRA and

---

[17] Moreover, whether or not *Foley* is distinguishable, the case is, in our opinion, wrongly decided.

[18] 26 Wn. App. 769, 614 P.2d 226 (1980).

[19] *In re Heritage Org., LLC*, 354 B.R. 407 (Bankr. N.D. Tex. 2006).

[20] *See, e.g.*, RCW 11.40.070(1)(e).

[21] RCW 11.96A.150(1).

that as prevailing party, it is entitled to an award of fees under the personal guaranty pursuant to RCW 4.84.330. We agree and award the Estate its reasonable costs and attorney fees on appeal.

¶24  We deny Hines' request for an award of attorney fees and costs on appeal. We need not and do not address Hines' argument that the trial court's award of attorney fees and costs to the Estate must be vacated.

## CONCLUSION

¶25  Hines' claim to enforce Earls' personal guaranty was subject to the nonclaim statute. Because Hines failed to comply with that statute, its claim against Earls' estate is barred. We affirm the trial court's order dismissing Hines' TEDRA petition to enforce the personal guaranty. We award the Estate its reasonable costs and attorney fees on appeal. The Estate is directed to comply with RAP 18.1.

Cox and ELLINGTON, JJ., concur.